IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CHASE JOSEPH DELL,<br><br>　　　　　Defendant. | ORDER<br>and<br>MEMORANDUM DECISION<br><br><br>Case No. 2:10-CR-896-TC |

　　　　Chase Dell was indicted and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Mr. Dell has moved to suppress physical evidence obtained during the search of his person and any statements made during his detention. Mr. Dell contends that the evidence should be suppressed because it was obtained in violation of his Fourth Amendment rights to be free from unreasonable searches and seizures. For the reasons set forth below, Mr. Dell's motion is GRANTED.

## FINDINGS OF FACT

　　　　About 5:00 p.m. on August 28, 2010, Officer Moe Tafisi was on patrol near 500 South on Navajo Street, Salt Lake City, Utah. Officer Tafisi had been employed with the Salt Lake City Police Department for six and a half years, during which he was assigned to patrol the "West Side," also known as the Glendale area. (Tr. at 5.) Officer Tafisi described this area as "high[]

crime for car prowl[s], high[] crime for drugs and so forth." (Tr. at 5.) But this description was based on Officer Tafisi's experience patrolling the area and was not supported by any statistics.

At 5:00 p.m. on August 28, 2010, it was fully daylight. Officer Tafisi was in a marked police vehicle, in uniform, and unaccompanied by any other officers. He was driving south on Navajo Street when he saw Mr. Dell and a female companion[1] standing next to a parked and empty car. Mr. Dell was leaning toward the car, a few inches away from the driver's side window, looking into the car in a back-and-forth manner. Mr. Dell's companion was standing in the same position on the passenger side of the car, also looking into the window in a back-and-forth manner. Neither Mr. Dell nor his companion touched the car or attempted to open it. Officer Tafisi had not received any reports of criminal activity or problems with that particular car.

As Officer Tafisi drove toward Mr. Dell and his companion, Mr. Dell looked directly at him. He and his companion then turned and walked away from the patrol car, walking in the same direction that Officer Tafisi was driving. While Mr. Dell continued to walk, his companion turned for a moment back toward the parked car, but then turned back around to follow Mr. Dell. Because Mr. Dell's and his companion's "actions were a suspicion" to Office Tafisi, he decided to turn around and make contact. (Tr. at 9.)

Officer Tafisi, who had now driven past the pair, made a U-turn in the intersection of Navajo and 550 South and parked in the street so he could make contact with Mr. Dell and his companion. By that time, Mr. Dell and his companion had reached the corner of Navajo and 550

---

[1]The record does not contain the female companion's name.

South. Officer Tafisi made eye contact with Mr. Dell, motioned with his hand, and said to Mr. Dell, "Hey, come over." (Tr. at 10, 24.) Mr. Dell, who was standing on the sidewalk, complied and approached Officer Tafisi's patrol car in the street. Office Tafisi explained that he wanted to speak with Mr. Dell and his companion about why they had been looking into the parked car. Mr. Dell was "jumpy" and "real excited" and told Officer Tafisi that he didn't have any reason to stop him and that he hadn't done anything wrong. (Tr. at 11.)

While still seated in his patrol car, Officer Tafisi asked Mr. Dell for his name and Mr. Dell responded, apparently with his real name. But Officer Tafisi heard the name as "Chase Dale" and not "Chase Dell." (Tr. at 12-13.) Officer Tafisi searched his computer, spelling the name "Chase Dale," as he had heard it, to determine if Mr. Dell had any warrants. The name "Chase Dale" was located in the system, but without any criminal history. Officer Tafisi then asked Mr. Dell if he had any history of incarceration, and Mr. Dell truthfully responded that he had been released from prison two days earlier.

During this conversation, Officer Tafisi had stepped out of his patrol car and asked Mr. Dell to move to the front of the car for safety reasons because the patrol car was parked in the middle of the street. When Officer Tafisi asked Mr. Dell's companion what she had been doing by the parked car, she answered that it was her sister's car. When asked again, she said it was her car and that something was wrong with the front tires or the lug nuts. Although she did not have identification, Officer Tafisi was able to identify her through a mug shot on his computer. She did not have any warrants and nothing in her history concerned Officer Tafisi.

Officer Tafisi then asked Mr. Dell if he had any photo identification. Mr. Dell answered that he did not. By this time, another officer had arrived. Officer Tafisi testified that he did not

3

recall requesting backup, only that he had called in his location. After it became clear that Mr. Dell did not have any photo identification with him, his companion offered to go to his house, which was only down the street, to get Mr. Dell's I.D.

A few minutes after Mr. Dell's companion had left to get Mr. Dell's I.D., Officer Tafisi said to Mr. Dell, "Hey, can I search you?" (Tr. at 34.) Mr. Dell did not answer but stood with his back to Officer Tafisi, lifted his arms to shoulder height, and spread his feet slightly apart. Officer Tafisi searched Mr. Dell's front pockets, where he believed wallets are usually kept. He immediately felt what he thought was a gun and heard a sound he believed to be the click of a hammer. Officer Tafisi asked Mr. Dell if it was a gun, and Mr. Dell answered that it was. The second officer grabbed Mr. Dell by the wrist and Officer Tafisi handcuffed him and removed the gun from Mr. Dell's left pocket. Mr. Dell's companion had not yet returned with his I.D.

When Mr. Dell's companion arrived with Mr. Dell's identification some moments later, Officer Tafisi ran his name through the computer system, this time correctly spelling it "Chase Dell." The search returned a result and Officer Tafisi discovered that Mr. Dell had an "extensive criminal history." (Tr. at 19.)

## CONCLUSIONS OF LAW

Mr. Dell contends that the physical evidence should be suppressed because Officer Tafisi's initial encounter with Mr. Dell was an investigatory stop and Officer Tafisi did not have reasonable suspicion to justify the investigatory stop.

**A.  Officer Tafisi's initial encounter with Mr. Dell was an investigatory stop.**

A seizure of the person within the meaning of the Fourth Amendment occurs when "taking into account all of the circumstances surrounding the encounter, the police conduct

would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Florida v. Bostick, 501 U.S. 429, 437 (1991) (quoting Michigan v. Chesternut, 486 U.S. 567, 569 (1988)). Courts have identified several factors that are relevant to the Bostick totality-of-the-circumstances approach, including:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

United States v. Spence, 397 F.3d 1280, 1283 (10th Cir. 2005) (citing United States v. Zapata, 997 F.2d 751, 756-57 (10th Cir. 1993)). But this "list of factors is non-exclusive and no one factor is dispositive." Spence, 397 F.3d at 1283. And the focus of the test is on "the coercive effect of police conduct, taken as a whole on a reasonable person." Id. (quoting United States v. Little, 18 F.3d 1499, 1504 (10th Cir. 1994)).

The court finds that Officer Tafisi's initial encounter with Mr. Dell was an investigatory stop because a reasonable person, under the totality of the circumstances, would not have felt at liberty to ignore Officer Tafisi. Although the court is aware that several of the above factors weigh in favor of a conclusion that the encounter was consensual, the court must focus on the coercive effect of Officer Tafisi's conduct, taken as a whole.

The following evidence has persuaded the court that a reasonable person would view Officer Tafisi's actions as coercive: at the time Officer Tafisi stopped Mr. Dell and his

companion, Officer Tafisi was wearing a uniform and driving a Salt Lake City Police Department patrol car; Officer Tafisi made a U-turn in the intersection of Navajo and 550 South and ultimately parked his car in the middle of 550 South so he could make contact with Mr. Dell; and, perhaps most significant, Officer Tafisi gestured for Mr. Dell to come to his patrol car and said, "Hey, come over." Officer Tafisi did not ask to speak to Mr. Dell, but rather commanded him to "come over" to the patrol car. Mr. Dell complied but immediately questioned Officer Tafisi's reasons for stopping him and claimed that he had done nothing wrong. Despite Mr. Dell's objections, Officer Tafisi never informed him that he was free to go or that he could refuse to speak to him. When taken as a whole, Officer Tafisi's actions had a coercive effect.[2]

### B. Officer Tafisi did not have reasonable suspicion to justify the investigatory stop.

Having determined that the initial encounter between Officer Tafisi and Mr. Dell was an investigatory stop, the question now is whether Officer Tafisi had a reasonable, articulable suspicion that Mr. Dell was engaged in criminal activity. See Terry v. Ohio, 392 U.S. 1, 21 (1968). Given the totality of the circumstances, the court finds that Officer Tafisi did not.

"While the Court has recognized in some circumstances a person may be detained briefly, without probable cause to arrest him, any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia, 448 U.S. 438, 440 (1980). When making a reasonable

---

[2] Compare these facts with United States v. Ringold, 335 F.3d 1168, 1172 (10th Cir. 2003) (finding consensual encounter where police officers approached the defendants after their car was already stopped in a public space outside a gas station; the patrol car, although parked at an angle, was not blocking the defendants from leaving; the officers were uniformed; and the conversation was "friendly in tone," having started with a discussion of the weather and turned to the subject of illegal drugs and guns).

suspicion determination, the court "must look at the 'totality of the circumstances' . . . to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting Cortez, 449 U.S. at 418)). And reviewing courts "accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995) (citing United States v. Lopez-Martinez, 24 F.3d 1481, 1484 (10th Cir. 1994)). But "[a]bsent a specific and articulable factual basis, an officer's 'perception' is nothing more than 'an inchoate and unparticularized suspicion or 'hunch,'' which cannot furnish the basis for an involuntary detention." United States v. Davis, 94 F.3d 1465, 1469 (10th Cir. 1996) (quoting United States v. Melendez-Garcia, 28 F.3d 1046, 1051 (10th Cir. 1994) (internal citations omitted)).

At the time that Officer Tafisi stopped Mr. Dell he had observed the following: (1) Mr. Dell and his female companion standing on either side of a parked car, leaning toward the car, and looking through the window in a back-and-forth manner; (2) that they were in what Officer Tafisi describes as a high crime area for car prowls and drugs; and (3) that after Mr. Dell saw Officer Tafisi, he and his companion turned and walked south on Navajo, away from Officer Tafisi but in the same direction that he was traveling. In considering the totality of the circumstances, the court gives deference to Officer Tafisi's experience. But training and instinct are not enough to furnish the basis for an investigatory stop. See Davis, 94 F.3d at 1469 (holding

an officer's perception based on ten years on the police force, without more, was insufficient to establish reasonable suspicion). And the circumstances preceding Officer Tafisi's detention of Mr. Dell did no justify a reasonable suspicion that he was involved in criminal conduct.

The fact that Mr. Dell and his companion were standing on either side of the parked car, looking into the windows in a back-and-forth manner is not enough to give Officer Tafisi reasonable suspicion that they were engaged in criminal activity. There had been no reports of an attempted car prowl or any problems involving that particular car. And Officer Tafisi never saw Mr. Dell or his companion touch the car. Their conduct, taken alone, "was no different from the activity of other pedestrians in that neighborhood." Brown v. Texas, 443 U.S. 47, 52 (1979); see also Reid v. Georgia, 448 U.S. 438, 441 (1980) (finding no reasonable suspicion based on the fact that one passenger proceeded through an airport concourse before his companion, allegedly to conceal the fact that they were traveling together, because the conduct "describe[d] a very large category or presumably innocent travelers").

Mr. Dell's presence in what Officer Tafisi describes as a high crime area is also insufficient to give Officer Tafisi reasonable suspicion. See Brown, 443 U.S. at 52 ("The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct.") And neither is the fact that Mr. Dell and his companion turned and walked away after having seen Officer Tafisi. See Davis, 94 F.3d at 1468 (finding no reasonable suspicion when defendant made and then broke eye contact with the officers, and then walked away from the officers).

And when considered together, under the totality of the circumstances, these facts do not

justify a reasonable suspicion that Mr. Dell was engaged in criminal activity. See Reid, 448 U.S. at 441 (finding no reasonable suspicion where (1) the defendant had arrived from Fort Lauderdale, which the agent testified is a principal place of origin of cocaine sold elsewhere in the country; (2) the defendant arrived early in the morning, when law enforcement activity is diminished; (3) the defendant and his companion appeared to the agent to be trying to conceal the fact that they were traveling together; and (4) neither one had any luggage other than their shoulder bags); Brown, 443 U.S. at 48, 52 (finding no reasonable suspicion where the defendant and another man walked in opposite directions away from one another in an alley that was in an area with a high incidence of drug traffic because the officer was unable to point to any particular facts supporting his conclusion that they "looked suspicious"); Davis, 94 F.3d at 1468-70 (finding no reasonable suspicion where (1) the defendant's car was parked outside a known criminal establishment; (2) the defendant exited the car when he saw the officers, made and then broke eye contact, and refused to stop when directed; (3) the defendant kept his hands in his pockets; and (4) the officers knew of the defendant's criminal record); see also State v. Trujillo, 739 P.2d 85, 86, 89 (Utah Ct. App. 1987) (applying Utah law for reasonable suspicion analysis) (finding no reasonable suspicion where officer saw defendant and two companions walking slowly and peering into business windows at 3:30 a.m. in an area where several car prowls had been reported recently and the defendant was carrying what the officer described as a suspicious knapsack); New York v. Roberts, 464 N.Y.S. 2d 111, 111-12, 114-15 (N.Y. App. Div. 1983) (applying New York law for reasonable suspicion analysis) (finding no reasonable suspicion where officers observed defendant and two others looking into a store window, and as the officers drove past, the defendant reached into the front pocket of his jacket and another man

looked at the officers, following which and all three walked away and repeated the same conduct at another store window).

For the foregoing reasons, the court finds that Officer Tafisi did not have reasonable suspicion to stop Mr. Dell.

**ORDER**

Mr. Dell's motion to suppress physical evidence and statements in violation of the Fourth Amendment (Dkt. No. 11) is GRANTED.

DATED this 15th day of March, 2011.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge